**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MICHAEL OWENS,**<br><br>**Plaintiff**,<br><br>**v.**<br><br>**STEPHEN B. CHASKO, an individual, and DOES 2 through 10, inclusive,**<br><br>**Defendants**. | **NO. 1:11-CV-00335 AWI GSA**<br><br>**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>(Document #16) |

**PARTIES AND JURISDICTION**

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties are citizens of different States; Plaintiff, Michael Owens ("Plaintiff"), was and still is a resident of the State of California, County of Tulare and Defendant, Stephen B. Chasko ("Defendant"), is a resident of State of Pennsylvania, community of Newmanstown. The parties agree that more than $75,000 is in controversy.

**BACKGROUND**

On March 22, 2011, Plaintiff filed his First Amended Complaint ("complaint") for Damages. Count One alleges Abuse of Process - Misuse of the discovery process to shock, humiliate, and embarrass. Count Two alleges Abuse of Process - Misuse of the discovery process to obtain information relating to the Hamilton Cove Homeowners Association. Count Three alleges Abuse of Process - Improper filing of an action in Pennsylvania. Count Four

alleges Intentional Infliction of Emotional Distress.

On April 8, 2011, Defendant filed a motion to dismiss. Defendant contends that the complaint fails to allege sufficient facts to support Defendant's alleged ulterior motive concerning the service of discovery. Defendant contends that no abuse of process claim can be based on the filing of an alleged improper action in Pennsylvania. Defendant contends Plaintiff's intentional infliction of emotional distress claim fails to allege outrageous conduct.

On May 16, 2011, Plaintiff filed an opposition to the motion to dismiss.

On May 23, 2001, Defendant filed a reply brief.

The court determined this matter suitable for decision without oral argument, and took the matter under submission on May 27, 2011.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6) a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6) all of the complaint's material allegations of fact are taken as true, and the facts are construed in the light most favorable to the non-moving party. Marceau v. Balckfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004). However, the court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of

elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

**ALLEGED FACTS**

The complaint alleges that, in January of 2009, Defendant initiated a lawsuit by filing a complaint in the Court of Common Pleas, located in West Chester, Pennsylvania, against Plaintiff, a resident of the County of Tulare, City of Visalia, State of California ("Pennsylvania

action"). To date, Defendant has never served Plaintiff with a summons or a copy of the complaint that was filed in Pennsylvania.

The complaint alleges that on or about March 5, 2009, Defendant served written discovery requests via facsimile, including form interrogatories and a request for the production of documents ("discovery requests"), upon Plaintiff at his business, Pacific West Controls, Inc., located in Visalia, California. The discovery requests concerned information for the Pennsylvania action and were entitled ". . . . Chasko's First Set of Interrogatories and Request for Documents to . . . . Owens." The complaint alleges that Defendant misused the legal process by serving discovery requests via facsimile to Plaintiff's business in California without having served Plaintiff with a copy of the summons and complaint or notifying Plaintiff of the filing of the complaint. The complaint alleges that Defendant's use of the legal process in this manner was not an authorized purpose.

The complaint alleges that Defendant's ulterior purpose for serving the discovery requests at Plaintiff's place of employment was to gain a collateral advantage by shocking, humiliating, and embarrassing Plaintiff so that Plaintiff's employees would be aware that Plaintiff had been sued. The complaint alleges that another ulterior purpose in misusing the discovery requests was for the purpose of obtaining information relating to Defendant's removal as a director of the Hamilton Cove Homeowners Association and obtaining information concerning the Hamilton Cove Homeowners Association.

The complaint alleges Defendant misused the legal process by filing a complaint in Pennsylvania against a California resident concerning an incident that occurred in a tight-knit community located in Avalon, California. The complaint alleges that an ulterior purpose was to file a lawsuit in Pennsylvania rather than California to avoid possible penalties that might be imposed upon Defendant by California's Anti-SLAPP statutes, which protects individuals, such as Plaintiff, and other Californians from strategic lawsuits intended to censor, intimidate and silence critics by burdening them with the cost of a legal defense.

The complaint alleges that the totality of Defendant's actions constituted an intentional infliction of emotional distress. The complaint alleges that the discovery requests were sent to Plaintiff via facsimile to his business as part of a systematic plan to intimidate, scare, and harass Plaintiff.

The complaint alleges that on or about January 29, 2009, and March 5, 2009, Defendant authored and sent a mass-recipient e-mail to Plaintiff, Plaintiff's friends, Plaintiff's clients, Hamilton Cove Homeowners Association members, and public officials describing facts relating to the Pennsylvania action. The complaint alleges the e-mails made by Defendant singled out only one of the Hamilton Cove Homeowners Association's Directors; Plaintiff. The complaint alleges that Defendant stated in the e-mails that he would be contacting federal officials concerning "mail fraud" and that new litigation would be filed in California that would amass prodigious costs.

The complaint alleges that Defendant, on or about March 2009, delivered a message to members of a Yahoo internet chat group ("chat group messages") consisting of Hamilton Cove Homeowners Association members, including Plaintiff, his wife, Plaintiff's friends, Plaintiff's business associates, and numerous public officials. The message specifically and repeatedly attacked Plaintiff and informed the readers that Defendant intended to publicize facts about the Pennsylvania action for the purpose of demonstrating that Plaintiff was a liar and a participating member of a corrupt board of directors involved in criminal activities.

The complaint alleges that Defendant has sent numerous other messages and posted other untruthful statements on the internet concerning Plaintiff and his wife. These written messages made by Defendant stated that Plaintiff was well-known to Defendant and that: "He is a proven liar and coward." The complaint alleges the written messages included a statement "that Theresa [Defendant's wife] and I [Defendant] watched this man's wife assault a member a year ago. We will gladly testify against this man and his wife."

The complaint alleges the Defendant's conduct was intentional and malicious and done

for the purpose of causing Plaintiff, his wife, and their family to suffer humiliation, mental anguish, financial concern, and emotional and physical distress.

The complaint alleges that Plaintiff and his wife have suffered humiliation, mental anguish, and emotional and physical distress, and have been injured in mind and body as follows: Plaintiff has been forced to defend, respond and explain his actions relating to all accusations concerning his activities as a director and human being. Because of Defendant's statements, Plaintiff has suffered humiliation, mental anguish, sleeplessness, concerns for his personal safety and financial well-being and was forced to consider and attempt to sell his residence in Avalon, all to Plaintiff's damage. Plaintiff was also required to attend to his wife who was suffering emotionally and forced to employ psychological counsel for examination, care, and treatment, requiring payment for medical consultations and expenses.

## DISCUSSION

### I. Abuse of Process

#### A. Legal Standard

The tort of abuse of process is the improper use of the machinery of the legal system for an ulterior motive. ComputerXpress, Inc. v. Jackson, 93 Cal.App.4th 993, 1014 (2001). The essence of the tort of abuse of process is the misuse of the court's power; "it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice." Rusheen v. Cohen, 37 Cal.4th 1048, 1057 (2006) (quoting Meadows v. Bakersfield S. & L. Assn. 250 Cal.App.2d 749, 753 (1967)). "To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." Rusheen, 37 Cal.4th at 1057; see also Bouyer v. GMAC Mortg., 2009 WL 2877603, at *4 (E.D.Cal. 2009). "Some definite act or threat not authorized by the process or aimed at an objective not legitimate in the use of the process is required. And, generally, an action lies only where the process is used to obtain an unjustifiable collateral advantage."

Younger v. Solomon, 38 Cal.App.3d 289, 297 (1974). Abuse of process claims typically arise for improper or excessive attachments or improper use of discovery. Bidna v. Rosen, 19 Cal.App.4th 27, 40 (9th Cir. 1993).

**B. Count One: Abuse of Process - Misuse of the Discovery Process to Shock, Humiliate, and Embarrass**

In Count One Plaintiff alleges that Defendant served written discovery requests upon Plaintiff at his place of business. The discovery requests concerned the Pennsylvania action. Plaintiff was neither served with a summons and complaint nor notified about the Pennsylvania action prior to receiving the discovery requests. Plaintiff has never been served with the summons and complaint in the Pennsylvania action, and Defendant has dismissed this action. Plaintiff alleges that Defendant's ulterior purpose in faxing the discovery requests to Plaintiff's place of employment was to gain a collateral advantage by shocking, humiliating, and embarrassing Plaintiff because Plaintiff's employees would become aware that Plaintiff was the defendant in a lawsuit.

The discovery requests constituted a "process" for the purposes of an abuse of process claim. California takes a broad view of the "process" that might serve as the basis of an abuse of process claim if wrongly used. Booker v. Rountree, 155 Cal.App.4th 1366, 1371 (2007). "Process" is not limited to the strict sense of the term, and "process" is interpreted broadly to encompass the entire range of procedures incident to litigation. Rusheen, 37 Cal.4th at 1057; Barquis v. Merchants Collection Assn., 7 Cal.3d 94, 104 n.4 (1972); Booker, 155 Cal.App.4th at 1371. Written interrogatories come within the range of procedures incident to litigation, and, as such, the use of interrogatories can constitute the use of "process" necessary for an abuse of process claim. Younger v. Solomon, 38 Cal.App.3d 289, 296-97 (1974). Because the complaint alleges Defendant served discovery requests concerning the Pennsylvania action on Plaintiff, the complaint meets the "process" element of an abuse of process claim.

The parties dispute whether the complaint's allegations concerning Defendant's serving

the discovery at the time and in the manner done sufficiently allege an ulterior motive. To show an ulterior motive, the plaintiff must show that the defendant employed the process for an end not germane to the legal proceeding, and an improper purpose may be the achievement of a benefit totally extraneous to or a result not within the legal proceeding's legitimate scope. Campbell v. City of Bakersfield, 2006 WL 2054072, at *21 (E.D. Cal. 2006); Ion Equipment Corp. v. Nelson, 110 Cal.App.3d 868, 876 (1980). "The gist of the action for abuse of process lies in the improper use of process after it is issued. To show that regularly issued process was perverted to the accomplishment of an improper purpose is enough." Carney v. Rotkin, Schmerin & McIntyre, 206 Cal.App.3d 1513, 1526 (1988) (quoting Spellens v. Spellens, 49 Cal.2d 210, 232 (1957)). "Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Spellens, 49 Cal.2d at 32.

An ulterior motive can be shown from the improper use of discovery. Bidna v. Rosen,19 Cal.App.4th 27, 40 (1993); Younger v. Solomon, 38 Cal.App.3d 289, 298 (1974). For example, in Younger v. Solomon, 38 Cal.App.3d 289 (1974), an interrogatory was used for what appeared to be the legitimate purpose of discovering matters relating to the plaintiff's defense to charges of ambulance-chasing and/or to questions regarding the identity and locations of witnesses. Id. at 293. However, the California Court of Appeals determined that the interrogatory could also have been used for the additional improper purpose of disclosing that a professional misconduct complaint against the plaintiff had been filed with the California State Bar. The California Court of Appeals stated that: "[i]t may be inferred that this was done to damage appellant's reputation as a lawyer and thereby unfairly eliminate or impede his activities as a competitor in the practice of law." Id. Because the interrogatory could have been used to damage the plaintiff's reputation, the court found an abuse of process claim was available.

Here, the complaint alleges that the purpose of serving the discovery upon Plaintiff by

sending it to a fax machine located at Plaintiff's place of employment was to shock, humiliate, and embarrass Plaintiff. While the discovery requests constituted a "process", at the time they were faxed to Plaintiff, Plaintiff had not yet been served with a copy of the complaint or summons in the Pennsylvania action. Given that the discovery requests were faxed to Plaintiff's place of employment, potentially allowing others to see the requests, along with the fact that the discovery requests were set prematurely, making all reasonable inferences in Plaintiff's favor, an inference can be made that Defendant was using the judicial process for a purpose other than that which it was intended to serve. At this time in the proceedings, the court must accept the complaint's alleged facts as true and detailed factual allegations in the complaint are not necessary. See Twombly, 550 U.S. at 555. Thus, the court finds the First Count alleges a claim for abuse of process.

**B. Count Two: Abuse of Process - Misuse of the discovery process to obtain information relating to the Hamilton Cove Homeowners Association**

The complaint alleges in Count Two that the discovery requests were done for the purpose of obtaining information relating to the removal of Defendant as the director of the Hamilton Cove Homeowners Association and to provide Defendant with information concerning the Hamilton Cove Homeowners Association. For the reasons discussed above, the discovery requests constituted a "process." As such, the issue is whether Plaintiff has alleged an ulterior motive.

To resolve whether Count Two states an abuse of process claim, the subject matter of the Pennsylvania action must be alleged. The complaint does not provide any specific facts concerning the Pennsylvania action. In addition, the discovery requests are not attached to the current complaint, as they were to the original complaint, and cannot be considered.[1] Even if the court were to consider the discovery requests attached to the original complaint, they do not

[1] An amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220.

offer sufficient information about the Pennsylvania action to determine if questions relating to the Hamilton Cove Homeowners Association are related to the Pennsylvania action. Without knowing the confines of the Pennsylvania action, it is impossible for the court to determine if Defendant's requests for information about the Hamilton Cove Homeowners Association and Defendant's removal as director were germane to the Pennsylvania action. Thus, Count Two, as alleged in the complaint, fails to state an abuse of process claim.

**D. Count Three: Abuse of Process - Improper filing of the Pennsylvania action.**

In Count Three, the complaint alleges that Defendant filed the Pennsylvania action to avoid possible penalties under California's Anti-SLAPP statutes. Plaintiff contends that the Pennsylvania action was without merit because the events at issue occurred in California and Plaintiff lives in California.

To the extent Plaintiff contends that the Pennsylvania action was without merit and an attempt to take advantage of the laws of that state, Plaintiff fails to state an abuse of process claim. While a defendant's act of improperly instituting or maintaining a lawsuit may, in an appropriate case, give rise to a cause of action for malicious prosecution, "the mere filing or maintenance of a lawsuit - even for an improper purpose - is not a proper basis for an abuse of process action." Lunsford v. Amer. Guarantee & Liab. Ins. Co., 18 F.3d 653, 655 (9th Cir. 1994) (quoting Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., 42 Cal.3d 1157, 1169 (1986)); Ramona Unified School Dist. v. Tsiknas,135 Cal.App.4th 510, 520 (2005). Thus, Defendant's alleged filing of the Pennsylvania action for the purpose of avoiding California's Anti-Slapp statutes cannot serve as the basis for an abuse of process claim.

Plaintiff contends that, despite the above authority, an abuse of process claim can be based on the filing of complaints without proper venue. Plaintiff cites Barquis v. Merchants Collection Association, 7 Cal.3d 94, 104 (1972), as support for this proposition. Preliminarily, it appears Barquis is no longer good law because it preceded the California Supreme Court's decision in Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., 42 Cal.3d

1157 (1986), which held that filing or maintaining a lawsuit, even for improper reasons, cannot provide the basis of an abuse of process claim. See Rusheen, 37 Cal.4th at 1059 (noting older cases did not address the applicability of the litigation privilege and later cases had narrowed the tort's reach).

This case also appears to be different from Barquis. In Barquis, the California Supreme Court reviewed allegations that the defendant, a collection agency, had a continuous pattern of deliberately filing actions in improper and distant venues by suing with form pleadings that masked the fact that venue was not proper. The plaintiff's complaint alleged a cause of action for abuse of process and argued that the defendant's ulterior motive was to impair the plaintiff's defenses and with the intent of securing default judgments. Barquis, 7 Cal.3d at 108. The California Supreme Court allowed this abuse of process claim to proceed. See id. However, it appears that it was the ***pattern*** of improper venue choices in a large number of actions that constituted the abuse of process and not one particular action filed in the wrong venue. See id. at 107-08. Such a widespread filing of actions in the wrong venue is not analogous to filing one action in the wrong venue for the alleged improper of avoiding California's Anti-Slapp statutes. Thus, Count Three is subject to dismissal.

**II. Count Four – Intentional Infliction of Emotional Distress**

In Count Four, Plaintiff contends that the totality of Defendant's actions constituted intentional infliction of emotional distress. Defendants contend that the complaint's allegations do not constitute outrageous conduct.

Under California law, "[a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009) (quotations and citations omitted); see also King v. AC & R Advertising, 65 F.3d

764, 770 (9th Cir. 1995); Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993); Christensen v. Superior Court, 54 Cal.3d 868, 903 (1991). "With respect to the requirement that the plaintiff show severe emotional distress, [the California Supreme Court] has set a high bar. 'Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." Huches, 46 Cal.4th at 1051 (quoting Potter, 6 Cal.4th at 1004). "The defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result." Potter, 6 Cal.4th at 1001. "It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." Christensen, 54 Cal.3d at 903. To be outrageous, the conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. Hughes, 46 Cal.4th at 1050; Potter, 6 Cal.4th at 1001. "Conduct is extreme and outrageous when it is of a nature which is especially calculated to cause, and does cause, mental distress." Wilkerson v. Butler, 229 F.R.D. 166, 171 (E.D. Cal. 2005). "Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Hughes, 46 Cal.4th at 1051 (internal quotes omitted). The issue of outrageousness is normally an issue of fact to be determined by the trier of fact. Trerice v. Blue Cross of California, 209 Cal.App.3d 878, 883 (1989). However, "[s]ummary judgment is proper if a claim cannot reasonably be regarded as so extreme and outrageous as to permit recovery." King, 65 F.3d at 770; see also Schneider v. TRW, Inc., 938 F.2d 986, 992 (9th Cir.1991) (affirming summary judgment when incidents in which supervisor made threatening gestures and screamed at employee while criticizing her showed rudeness and insensitivity, but did not amount to outrageous conduct).

The complaint contends that Defendant filed the Pennsylvania action over which the Pennsylvania courts did not have jurisdiction or venue. Defendant then served the discovery requests in violation of both California and Pennsylvania discovery statutes because Plaintiff had

never been served with a summons or complaint. The discovery requests were sent to Plaintiff's place of business and included a caption listing Plaintiff as a party to the Pennsylvania action and included extensive written directions and interrogatories.

In this action, Plaintiff has not provided any authority for the proposition that initiating a lawsuit can give rise to a cause of action for intentional infliction of emotional distress. See Cantu v. Resolution Trust Corp., 4 Cal.App.4th 857, 888 (1992) (noting plaintiff had never presented any basis for his assertion that initiating a lawsuit can give rise to a cause of action for intentional infliction of emotional distress). In fact, courts have found that even if a defendant's conduct exceeds the "bounds of human decency," a cause of action for intentional infliction of emotional distress is not actionable pursuant to California Civil Code § 47(b) if it is based on the filing of complaints and pleadings or if the defendant's conduct took place in a judicial proceeding. Cantu, 4 Cal.App.4th at 888; Nagy v. Nagy, 210 Cal.App.3d 1262, 1270 (1989); Chauncey v. Niems, 182 Cal.App.3d 967, 980 (1986); Thornbrough v. Western Placer Unified School District, 2010 WL 2179917 at *9 (E.D. Cal. 2010); see also Hagberg v. California Federal Bank, 32 Cal.4th 350, 360 (2004) (Section 47(b) establishes an absolute privilege for such statements and bars all tort causes of action based on them except a cause of action for malicious prosecution); Fenters v. Yosemite Chevron, 2006 WL 3762116, at *11 (E.D.Cal. 2006) (same). Thus, Defendant's filing of the Pennsylvania action cannot provide a basis for Plaintiff's intentional infliction of emotion distress claim.

However, Plaintiff's intentional infliction of emotional distress claim is not based solely on the filing of the Pennsylvania action and the discovery requests. The privilege for statements made in a "judicial proceeding" does not apply to statements made outside the courtroom to nonparties unconnected to the proceedings. Begier v. Strom, 46 Cal.App.4th 877, 882 (1996); Shahvar v. Superior Court, 25 Cal.App.4th 653, 657-659 (1994). Besides Defendant's conduct relating to the Pennsylvania action, the complaint alleges that Defendant sent mass e-mails to Plaintiff's friends, business associates, public officials and members of the Association attacking

Plaintiff personally and informing the e-mail recipients that Defendant had initiated the Pennsylvania action and would soon be instigating a lawsuit against plaintiff in California. The complaint alleges that Defendant's e-mails included statements that Defendant would be contacting federal officials concerning mail fraud and that new litigation would be filed in California that would amass prodigious costs. Defendant also authored a mass-recipient email that stated Defendant and his wife were willing to testify against Plaintiff and his wife concerning an alleged assault by Plaintiff's wife. The complaint alleges that, through a Yahoo internet chat group, Defendant repeatedly attacked Plaintiff and informed readers that Defendant intended to publish facts about the Plaintiff for the purpose of demonstrating that Plaintiff was a liar and a participating member of a corrupt board of directors involved in criminal activities. Through the chat group, Defendant alleged Plaintiff was a proven liar and coward.

Defendant contends that Defendant's alleged statements were no more than insults, indignities, and annoyances. Defendant contends that such e-mail statements and chat group postings cannot constitute extreme and outrageous conduct. Plaintiff contends that Defendant's statements and actions were perceived as a systematic plan to attempt to economically ruin Plaintiff's family through the filing of civil litigation and the filing of a criminal complaint, possibly forcing Plaintiff to stand trial and defend criminal charges.

The court cannot find that Plaintiff's perception that the e-mails and chat group postings were part of a plan to economically ruin Plaintiff and his family is insufficient to constitute conduct that no reasonable person in civilized society should be expected to endure it. Plaintiff's and his wife's[2] emotional reaction to being criticized and threatened with legal action about Plaintiff's actions as a home owners association director, however unjustified or defamatory, does not constitute the sort of severe emotional distress of such lasting and enduring quality that no reasonable person should be expected to endure. Thus, Claim Four is subject to

---

[2] Plaintiff's wife is not a party to this action. Thus, it is questionable whether any of Plaintiff's wife's reactions and damages can serve as the basis for Plaintiff's intentional infliction of emotional distress cause of action.

dismissal.

**III. Leave to Amend**

The court finds that Count 2, Count 3, and Count 4 are subject to dismissal. When dismissing a complaint or claim, the Ninth Circuit has stated that "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted); Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.1996). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

The court cannot find that the dismissed claims cannot be cured by amendment. Although the court will allow Plaintiff to amend, Plaintiff is advised that any amended complaint must be based upon a well-founded belief that a cognizable or arguable legal theory exists that would support such a theory. See Fed. R. Civ. P. 11.

**ORDER**

Accordingly, the court ORDERS that:

1. Defendant's motion to dismiss is GRANTED in part and DENIED in part;
2. Count 2, Count 3, and Count 4 are DISMISSED with leave to amend;
3. Any amended complaint SHALL be filed within thirty days of this order's date of service;[3]
4. Any responsive pleading to the amended complaint SHALL be filed within twenty days of the date the amended complaint is filed.

IT IS SO ORDERED.

Dated: July 25, 2011

CHIEF UNITED STATES DISTRICT JUDGE

[3] If no amended complaint is filed, the court will proceed with this action on Count 1.